_____

NO. 08-1385
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

UNITED STATES OF AMERICA,

Appellee,

vs.

DALE GILES,

Appellant.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

Honorable Laurie Smith Camp, District Court Judge

_____

**BRIEF OF APPELLANT**

_____

Mark A. Weber, NSBA #18666
WALENTINE, O'TOOLE,
  McQUILLAN & GORDON
11240 Davenport Street
P.O. Box 540125
Omaha, Nebraska 68154-0125
(402) 330-6300
maweber@womglaw.com
Attorney for Appellant

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

The Appellant, Dale Giles, was indicted on nine counts in the Fifth Superseding Indictment including one count of conspiracy to distribute or possess with intent to distribute more than 1,000 kilograms of marijuana; three counts of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime; three counts of being a felon in possession of a firearm; one count possession with intent to distribute or possession with intent to distribute at least 100 kilograms of marijuana; and one count for a criminal forfeiture provision, should he be found guilty on the other counts

Dale Giles pleaded not guilty to all counts. Following a jury trial, Mr. Giles was found guilty on all counts on October 25, 2007. Mr. Giles was sentenced on January 28, 2008

Mr. Giles argues that he had ineffective assistance of counsel at the outset of his case, that the trial court erred in overruling the Appellees' *Batson* challenges, that the trial court erred in sentencing Mr. Giles as it did, and that there was a fatal variance between the indictment and the evidence presented by the government at trial.

Accordingly, Mr. Giles requests twenty (20) minutes of oral argument before this Court to discuss these issues.

i

# TABLE OF CONTENTS

**SUMMARY AND REQUEST FOR ORAL ARGUMENT** ................................. i

**TABLE OF AUTHORITIES** ................................................................. iv

**JURISDICTIONAL STATEMENT** ....................................................... 1

**STATEMENT OF THE ISSUES** ........................................................... 2

**STATEMENT OF THE CASE** .............................................................. 3

**STATEMENT OF THE FACTS** ............................................................ 5

**SUMMARY OF THE ARGUMENT** ................................................... 12

**ARGUMENT** ....................................................................................... 14

   **I.   THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL** ......................................................................... 14

   **II.   THE GOVERNMENT'S PEREMPTORY CHALLENGES VIOLATED THE APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION UNDER THE LAW** ........................... 24

   **III.   THE TRIAL COURT VIOLATED THE APPELLANT'S SIXTH AMENDMENT RIGHTS BY FINDING THAT HE COMMITTED FIRST DEGREE MURDER ON FACTS NOT PRESENTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT.** ......................... 27

   **IV.   THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS BECAUSE THERE WAS A FATAL VARIANCE**

Appellate Case: 08-1385   Page: 3   Date Filed: 08/20/2008 Entry ID: 3463974

**BETWEEN COUNT II OF THE FIFTH SUPERSEDING INDICTMENT AND THE EVIDENCE PRESENTED AT TRIAL** ........................................41

**CONCLUSION**............................................................................45

**CERTIFICATE OF SERVICE** ...................................................46

**CERTIFICATE OF COMPLIANCE** ..........................................48

**ADDENDUM** ............................................................................50

Appellate Case: 08-1385    Page: 4    Date Filed: 08/20/2008 Entry ID: 3463974

# TABLE OF AUTHORITIES

## Cases

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) ......................... 3, 32

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).................................... 3, 28

*Blakley v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004)............................ 4, 40

*Cunningham v. California*, 127 S.C.t 856 (2007)................................................ 4, 42

*Frey v. Schuetzle*, 151 F3d 893 (8th Cir. 1998).........................................................16

*Marcrum v. Luebbers*, 509 F.3d 489 (8th Cir. 2007), ..................................... 17, 18

*Nicklasson v. Roper*, 491 F.3d 830 (8th Cir. 2007) .......................................... 3, 28

*State of Arizona v. Lee*, 689 P.2d 153 (Ariz. 1984) ........................................ passim

*State of Nebraska v. Clausen*, 527 N.W.2d 609 (Neb. 1995)................. 2, 18, 19, 21

*Strickland v. Washington*, 104 S.Ct. 2050 (1984) ............................................. 2, 17

*U.S. v. Blue Thunder*, 604 F.2d 550 (8th Cir. 1979).................................... 4, 39, 40

*United States v. Begnaud*, 783 F.2d 144 (8th Cir. 1986)....................... 4, 45, 46, 48

*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005)................................33

*United States v. Bradford*, 499 F.3d 910 (8th Cir. 2007). ............................... 30, 43

*United States v. Cook*, 356 F.3d 913 (8th Cir. 2004)...............................................17

*United States v. D'Andrea*, 473 F.3d 859 (8th Cir. 2007)......................................30

*United States v. Gallimore*, 491 F.3d 871 (8th Cir. 2007).....................................30

*United States v. Johnson*, 934 F.2d 936 (8th Cir. 1991).................................... 4, 46

Appellate Case: 08-1385    Page: 5    Date Filed: 08/20/2008 Entry ID: 3463974

*United States v. Moore*, 895 F.2d 484 (8th Cir. 1990). ...........................................27

*United States v. Stuckey*, 220 F.3d 976 (8th Cir. 2000).................................... 5, 49

*United States v. Townley*, 929 F.2d 365 (8th Cir. 1991) .........................................43

**Statutes**

18 U.S.C. § 2 ...............................................................................................8, 9

18 U.S.C. § 922(g)(1)...................................................................................8, 9

18 U.S.C. § 924(c)(1)(A) ...................................................................... passim

18 U.S.C. § 924(c)(1)(C)(i)...................................................... 1, 5, 9, 33

18 U.S.C. § 1111 .................................................................................... passim

18 U.S.C. § 2253 ....................................................................... 1, 5, 8, 33

21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) ................................... 1, 5, 7, 33

21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) ....................................... 5, 8, 33

**Other Authorities**

U.S.S.G. §2D1.1(3)............................................................. 7, 13, 31, 44

U.S.S.G. §2D1.1(d)(1) ........................................................................ passim

Appellate Case: 08-1385    Page: 6    Date Filed: 08/20/2008 Entry ID: 3463974

# JURISDICTIONAL STATEMENT

1.     The Appellant, Dale Giles, appeals from the judgment and sentence imposed by the Honorable Laurie Smith Camp, United States Magistrate Judge for the District of Nebraska.  The case number below is 8:06CR116.

2.     Dale Giles was convicted of nine counts: one count of conspiracy to distribute or possess with intent to distribute more than 1,000 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii)(Count I); three counts of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) and (C)(i)(Counts II, IV and VII); three counts of being a felon in possession of a firearm under 18 U.S.C. 922(g)(1)(Counts III, V and VIII); one count possession with intent to distribute or possession with intent to distribute at least 100 kilograms of marijuana (Count VI); and one count for violation of 18 U.S.C. § 2253, a criminal forfeiture provision, should he be found guilty on the above-listed counts.

3.     The trial court had jurisdiction over this case pursuant to 18 U.S.C. § 3231, as Mr. Giles was charged with offenses against the United States.

4.     Following trial, the jury found Mr. Giles guilty on all counts on October 25, 2007.  Mr. Giles was sentenced on January 28, 2008.

Appellate Case: 08-1385     Page: 7     Date Filed: 08/20/2008 Entry ID: 3463974

5.    The United States Court of Appeals for the Eighth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over a final order subject to appeal, and 18 U.S.C. § 3742 which provides for review of a federal sentence.

## STATEMENT OF THE ISSUES

1.    THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

*Strickland v. Washington*, 104 S.Ct. 2050 (1984)

*State of Nebraska v. Clausen*, 527 N.W.2d 609 (Neb. 1995)

*State of Arizona v. Lee*, 689 P.2d 153 (Ariz. 1984)

2.    THE GOVERNMENT'S PEREMPTORY CHALLENGES VIOLATED THE APPELLEE'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION.

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)

*Nicklasson v. Roper*, 491 F.3d 830 (8th Cir. 2007)

3.    THE TRIAL COURT VIOLATED MR. GILES' SIXTH AMENDMENT RIGHTS BY FINDING THAT HE COMMITTED FIRST DEGREE MURDER ON FACTS NOT PRESENTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000)

Appellate Case: 08-1385    Page: 8    Date Filed: 08/20/2008 Entry ID: 3463974

*U.S. v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979)

*Blakley v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531 (2004)

*Cunningham v. California*, 127 S.C.t 856, 868 (2007)

4.  THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS BECAUSE THERE WAS A FATAL VARIANCE BETWEEN COUNT II OF THE FIFTH SUPERSEDING INDICTMENT AND THE EVIDENCE PRESENTED AT TRIAL.

*United States v. Begnaud*, 783 F.2d 144 (8th Cir. 1986)

*United States v. Johnson*, 934 F.2d 936 (8th Cir. 1991)

*United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000)

## STATEMENT OF THE CASE

The Appellant, Dale Giles, was indicted on nine counts in the Fifth Superseding Indictment: one count of conspiracy to distribute or possess with intent to distribute more than 1,000 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) (Count I); three counts of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) and (C)(i) (Counts II, IV and VII); three counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) (Counts III, V and VIII); one count possession with intent to distribute or

3

possession with intent to distribute at least 100 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) (Count VI); and one count for violation of 18 U.S.C. § 2253, a criminal forfeiture provision, should he be found guilty on the above-listed counts.

Dale Giles pleaded not guilty to all counts. Trial by jury was had September 25-27, October 1-4, 9-11, 15-16, and 22-25, 2007. Following voir dire, the government moved to strike the only two jurors of color from the panel and the trial court overruled the Appellants' *Batson* challenges. During trial, testimony was received that the discharge of a weapon counts related to an incident with Monte Williams and not Clarence Dennis as was presented to the Grand Jury. In addition, testimony was received that previous counsel for Mr. Giles had attempted to suborn perjury from witnesses in Mr. Giles' favor.

Following a jury trial, Mr. Giles was found guilty on all counts on October 25, 2007. Mr. Giles was sentenced on January 28, 2008 to life imprisonment on Counts I and VI, followed by ten years supervised release on Count I and eight years supervised release on Count VI; 120 months imprisonment on Counts III, V and VIII to be served concurrently with the life sentence, to be followed by two years of supervised release to be concurrent to the Counts I and VI; 120 months imprisonment on Count II to be served consecutively to all other counts, followed by three years supervised release; 300 months imprisonment on Count IV to be

Appellate Case: 08-1385     Page: 10     Date Filed: 08/20/2008 Entry ID: 3463974

served consecutively to all other counts, followed by three years supervised release; 300 months imprisonment on Count VII to be served consecutively to all other counts, followed by three years supervised release; and forfeiture of all the property and currency identified in the Fifth Superseding Indictment, with the exception of paragraph 31.

The trial court sentenced Mr. Giles according to the Presentence Investigation Report which assessed Mr. Giles with a base offense level of 43 under at U.S.S.G. §2D1.1(d)(1) which provides that if the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, the offense level is the greater of level 43 and the offense level determined by application of U.S.S.G. §2D1.1(3) (the Drug Quantity Table). Murder was never found by the jury, nor by the trial court, beyond a reasonable doubt.

This appeal follows.

## STATEMENT OF THE FACTS

In the first Indictment filed on April 20, 2006, Mr. Giles was charged with one count of conspiracy to distribute or possess with intent to distribute more than 1,000 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) between December 2, 2004 and April 4, 2006 (Count I); one count of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance

5

of, a drug trafficking crime between December 2, 2004 up to and including October 3, 2005, under 18 U.S.C. § 924(c)(1)(A) (Count II); one count of being a felon in possession of a firearm in relation to Count II under 18 U.S.C. § 922(g)(1) (Count III); one count possession with intent to distribute or possession with intent to distribute at least 100 kilograms of marijuana between April 3 and April 4, 2006 under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) (Count IV); one count of using, carrying and possessing a firearm during and in relation to a drug trafficking crime as alleged in Count IV under 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count V); one count for being a felon in possession of a firearm in relation to Count V under 18 U.S.C. § 922(g)(1) (Count VI); and one count for violation of 18 U.S.C. § 2253, a criminal forfeiture provision, should he be found guilty on the above-listed counts. (Filing No. 1).

On January 18, 2007, a Fifth Superseding Indictment was filed against Mr. Giles. (Filing No. 298). The Fifth Superseding Indictment contained nine counts that differed from those initially filed. *Id.* First, Count II was amended to charge Mr. Giles with using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime on October 3, 2005 only. *Id.* Count III charging Mr. Giles with being a felon in possession of a firearm was amended accordingly. *Id.* Two new charges were filed against Mr. Giles: one count for using, possessing and discharging a firearm during and in relation to a

6

drug trafficking crime on or about May 3 and May 4, 2005 under 18 U.S.C. § 924(c)(1)(A) and (C)(i) and 18 U.S.C. § 2 (Count IV); and one count of being a felon in possession of a firearm in relation to Count IV under 18 U.S.C. § 922(g)(1) (Count V). *Id.* Last, the Fifth Superseding Indictment changed the type of firearm and ammunition involved in the felon in possession of a firearm count as it related to the conduct on April 3 and 4, 2006. *Id.*

Prior to trial, Mr. Giles was represented by Terri Crawford who was appointed to defend his case. Ms. Crawford served as Mr. Giles' counsel until she was terminated from her appointment on March 20, 2007 and instant counsel was appointed. (2195:20-21). Testimony was presented during trial that suggested Ms. Crawford attempted to suborn perjury from several witnesses, including Roosevelt Jackson, George Moore, and Johnny Newell.

After instant counsel was appointed and weeks before trial was scheduled to begin, the defense received a large volume of discovery from the government. (Filing No. 492). Included in the discovery documents was a conditional non-prosecution agreement of Clarence Dennis. *Id.* Mr. Giles filed a Verified Motion in Limine, or in the Alternative, Motion to Continue Trial on September 18, 2007. *Id.* This motion was based, in part, upon the information disclosed in a set of discovery received from the government weeks prior to trial which included a non-prosecution agreement for Clarence Dennis. *Id.* When Mr. Giles filed the

Appellate Case: 08-1385     Page: 13     Date Filed: 08/20/2008 Entry ID: 3463974

Verified Motion in Limine, it was his understanding that Counts II and III of the indictment related to the shooting of Monte Williams because of the date, October 3, 2005. This variance was addressed in the Motion in Limine, but the lower court denied Mr. Giles' motion. (Filing No. 499).

Jury selection was held on September 25, 2007. (11-81). During voir dire, the government struck the only two African Americans from the panel. First, the government struck Debra Dryver, an African American woman, from the panel. (78:23-25). The government stated that it struck Ms. Dryver because she lived in Section 8 housing, would "not be fair to the government" and would be sympathetic to the Defendants. (79:5-11). Second, the government struck Lesley Dean, the only remaining African American juror. Ms. Dean's Son had been charged with brutality against a police officer. (48:23-49:3). Defense counsel objected to the government's use of challenges in this manner, but the court did not find a Constitutional violation and the jurors were stricken. (78:23-82:8; 81:13-17).

Trial by jury was had September 25-27, October 1-4, 9-11, 15-16, and 22-25, 2007. As part of its case-in-chief, the government presented testimony that three bodies were found burning in the bushes on May 4, 2005. (152:13-23; 153:2-23). The defendants and the government stipulated at trial that the three bodies

Appellate Case: 08-1385    Page: 14    Date Filed: 08/20/2008 Entry ID: 3463974

were those of Benigo "Jimmy" Dominguez, Frank Wilkinson and Faustino Garcia. (232-235:1-6).

George Moore, the only alleged independent eye witness to the discharge of a weapon involving Dominguez, Wilkinson and Garcia, testified that he was present at the house next door to the barbershop on May 3, 2005. (2225:21-2226:1, 2227:12-13). Mr. Giles, Charmar Brown and three Hispanic men were present in the home while Mr. Moore was there. (2228:24-2229:1). Mr. Giles and Mr. Brown left the house and Mr. Moore stayed inside the home with the three Hispanic men. (2232:8-10). About 45 minutes later, Mr. Giles and Mr. Brown came back to the house. (2236:1-4).

According to Mr. Moore, Mr. Giles told him to go outside and grab a cellular phone. (2237:6-8). Mr. Moore explained:

> Me and Mr. Giles came outside. And at that point in time I was already around this corner. That's when he called me over there. And that's when – at that point in time when he got tot eh door, he came out, it was going pop, pop, pop. And then Mr. Brown came to the door. And that's when I heard the fourth shot, when Mr. Brown came to the door and Mr. Giles told Mr. Brown to go back in and handle his. That's when I heard the fourth pop.

9

(2743:14-21). Mr. Moore testified that he did not see a gun in Mr. Giles' hand during this time. (2763:19-22).

The jury began deliberations on October 25, 2007 and returned a verdict of guilty on all counts as to all defendants by the end of the day. (Filing No. 572). Mr. Giles filed a Motion for a Judgment of Acquittal and Motion for a New Trial. (Filing No. 581). Without hearing or argument on the Motion, the court denied Mr. Giles' Motion on November 1, 2007. (Filing No. 587).

Sentencing was held on January 28, 2008. A Revised Presentence Investigation Report ("RPSR") was prepared to which Mr. Giles filed his objections. Mr. Giles was sentenced according to the RSPR that assessed a base offense level of 43 for Counts I, III, V, VI, and VIII of the Fifth Superseding Indictment (Counts II, IV and VII were not grouped with the other offenses since specific terms of imprisonment must be imposed for those counts). The probation officer reached this base offense level of 43 by concluding that Mr. Giles killed Benigno Dominguez, Frank Wilkinson and Faustino Garcia to avoid paying them for a load of marijuana which they delivered to Mr. Giles, and as such, Mr. Giles was guilty of first degree murder. (RPSR p. 12).

To reach this conclusion, the probation officer applied the cross reference at U.S.S.G. §2D1.1(d)(1) which provides that if the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, the offense

10

level is the greater of level 43 and the offense level determined by application of U.S.S.G. §2D1.1(3) (the Drug Quantity Table). Based upon the "offense conduct" recited by the government, the probation officer determined that Mr. Giles was responsible for at least 8,536.7 kilograms of marijuana which results in a base offense level of 34. (RPSR p. 10). Under the provisions of U.S.S.G. §2D1.1(d)(1), the probation officer assigned Mr. Giles with a base offense level of 43 since it was greater than 34 (RPSR p. 12).

Despite counsel's objections to the RPSR, the trial court adopted the report and sentenced Mr. Giles accordingly. (12:20-21). Mr. Giles was sentenced to life imprisonment on Counts I and VI, followed by ten years supervised release on Count I and eight years supervised release on Count VI; 120 months imprisonment on Counts III, V and VIII to be served concurrently with the life sentence, to be followed by two years of supervised release to be concurrent to the Counts I and VI; 120 months imprisonment on Count II to be served consecutively to all other counts, followed by three years supervised release; 300 months imprisonment on Count IV to be served consecutively to all other counts, followed by three years supervised release; 300 months imprisonment on Count VII to be served consecutively to all other counts, followed by three years supervised release; and forfeiture of all the property and currency identified in the Fifth Superseding Indictment, with the exception of paragraph 31. (Filing No. 627). The judgment

Appellate Case: 08-1385   Page: 17   Date Filed: 08/20/2008 Entry ID: 3463974

was entered on February 1, 2008.  *Id.*  Mr. Giles filed a timely notice of appeal on February 8, 2008.  (Filing No. 644).

## SUMMARY OF THE ARGUMENT

1.     Mr. Giles was denied effective assistance of counsel at the outset of his case.   Initially, Terri Crawford was appointed to represent Mr. Giles. Testimony was presented by the government and co-defendants at trial that during her representation of Mr. Giles, Ms. Crawford attempted to suborn perjury from several witnesses including Roosevelt Jackson, George Moore, and Johnny Newell, all of whom testified at trial.  It was testified that Ms. Crawford asked these witnesses to alter their testimony and shift the blame to co-defendant Charmar Brown.   The jury was allowed to impute Ms. Crawford's attempts to suborn perjury to Mr. Giles, causing reversible error.  As such, Ms. Crawford's conduct was deficient, prejudiced the defense, and constituted ineffective assistance of counsel.

2.     The government's use of peremptory challenges during jury selection violated Mr. Giles' 14th Amendment right to Equal Protection.  During voir dire, the government used peremptory challenges to strike the only two African Americans on the panel.   Mr. Giles and his co-defendants asserted *Batson*

12

challenges; however, the lower court upheld the challenges despite the weak explanations offered by the government and the jurors were stricken.

3.　　The lower court violated Mr. Giles' Sixth Amendment rights by finding that he committed first degree murder on facts that were not presented to the jury and that were not found beyond a reasonable doubt.  First, the probation officer assessed a base offense level of 43 for Counts I, III, V, VI, and VIII as against Mr. Giles.  The probation officer reached this base offense level of 43 by concluding that Mr. Giles killed Benigo Dominguez, Frank Wilkinson and Faustino Garcia to avoid paying them for a load of marijuana which they delivered to Mr. Giles, and as such, Mr. Giles was guilty of first degree murder.  Counsel objected to the Revised Presentence Investigation Report, but despite those objections, the trial court adopted the report and sentenced Mr. Giles accordingly.

The problem with the trial court's adoption of the RPSR and the sentence given to Mr. Giles is that the issue of murder was never submitted to the jury and was necessarily never proven beyond a reasonable doubt.   In fact, the jury never even concluded that discharge of a weapon was found beyond a reasonable doubt. As such, the trial court violated Mr. Giles' Sixth Amendment rights and the *Apprendi* ruling by sentencing Mr. Giles according to the RPSR.

4.　　The lower court erred in denying Mr. Giles' motion to dismiss Counts II  and III of the Fifth Superseding Indictment because the evidence presented by

Appellate Case: 08-1385　　Page: 19　　Date Filed: 08/20/2008 Entry ID: 3463974

the government at trial with regard to these counts varied from the conduct charged in the indictment. The charges in the indictment related solely to the shooting of Monte Williams on October 3, 2005; however, at trial, the government had Clarence Dennis testify to a separate, distinct incident which varied from that charged in the indictment. This variance resulted in a constructive amendment to the indictment in violation of Mr. Giles' Fifth Amendment right to be charged by Grand Jury.

## ARGUMENT

### I. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

#### A. Standard of Review

An ineffective assistance of counsel claim presents a mixed question of law and fact, and the Court of Appeals reviews a district court's legal conclusions de novo and its factual findings for clear error. *Frey v. Schuetzle*, 151 F3d 893, 899 (8th Cir. 1998). Ineffective assistance of counsel claims are proper on direct appeal with the record is fully developed and to avoid a "plain miscarriage of justice." *United States v. Cook*, 356 F.3d 913, 919-20 (8th Cir. 2004). Ineffective assistance claims are also appropriate on direct appeal when trial counsel's ineffectiveness is "readily apparent or obviously deficient." *Id.*

14

## B.    Argument

The standard for determining whether a defendant's trial counsel was ineffective was set forth by the United States Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2050 (1984).  The standard requires that two components are met.  First, the defendant must show that trial counsel's performance was deficient.  This component requires a showing that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment.  Second, the defendant must show that trial counsel's deficient performance prejudiced the defense.

Whether trial counsel's performance was deficient is based upon an objective standard of reasonableness.  *Marcrum v. Luebbers*, 509 F.3d 489 (8th Cir. 2007), citing *Strickland*.  Specifically, a reviewing court must assess the reasonableness of all facts of the case, evaluate the facts as they existed at the time of trial counsel's conduct, and evaluate trial counsel's performance functioned to assure adversarial testing of the government's case.  *Id.* at 502.  As part of its analysis, a reviewing court must determine whether counsel's performance was based upon a sound trial strategy or was the result of error.  *Id.*  With regard to the second prong, a defendant must show that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *Id.* at 503.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

15

Counsel has located two state cases that speak to trial counsel's involvement with perjured testimony and its effect on a defendant's Sixth Amendment right to assistance of counsel. See *State of Nebraska v. Clausen*, 527 N.W.2d 609 (Neb. 1995) and *State of Arizona v. Lee*, 689 P.2d 153 (Ariz. 1984). While neither of these cases directly addresses whether a trial counsel's independent attempts to suborn perjured testimony constitute ineffective assistance of counsel, the cases contain analysis that is instructive in the instant appeal.

In *State of Nebraska v. Clausen*, 527 N.W.2d 609 (Neb. 1995), the appellate court remanded the defendant's case for a new trial because the court found that the defendant had shown that his trial counsel was ineffective. The defendant in *Clausen* was charged with first degree murder arising out of a shooting which took place while other parties were present. At the defendant's preliminary hearing a witness present at the shooting testified that he heard two gunshots, entered the room where the defendant and the victim were and saw them struggling over the gun. Later at trial, the witness recanted and testified that he did not enter the room until after the shooting had occurred and that the defendant was holding the gun and the victim was slumped against a wall, without a pulse.

Upon examination by the government at trial regarding his recantation, the witness stated that defendant's counsel at the preliminary hearing had asked him if he would lie for the defendant and the witness said he would if he had to.

According to the witness, counsel then told the witness he may have to lie. Defense counsel failed to object to this line of questioning by the government. Instead, counsel himself continued with this line of questioning on his cross-examination of the witness and elicited testimony that the defendant had told the witness to lie for him. The government had not previously established that the defendant had directed the witness to lie. As a result, the jury was able to speculate as to the defendant's consciousness of guilt and was diverted from the real issues in the case.

Not only did counsel question the witness about the defendant's possible involvement in obtaining false testimony, counsel also called the defendant's former attorney who had represented him at the preliminary hearing to rebut any involvement that counsel had in obtaining the false statements. Former counsel testified that she had never directed the witness to lie at the preliminary hearing. Then, in rebuttal, the government called an officer who overheard counsel at the preliminary hearing. The officer heard former counsel ask the witness whether he knew what to say on the stand and then he saw the witness nod affirmatively in response.

With regard to trial counsel's actions in eliciting testimony about the defendant's possible involvement in obtaining perjured testimony, the court stated:

We can think of no instance where defense counsel would elicit the fact that the defendant had requested a witness to lie for the defendant at trial. This line of questioning could only result in a prejudicial effect upon the defendant's case…The evidence of [counsel's] alleged attempt to suborn perjury was highly prejudicial, and trial counsel should have objected to the testimony.

*Id.* at 613.

After discussing the standard for ineffective assistance of counsel set forth in *Strickland*, the court found that trial counsel's performance fell below the required standard of reasonableness and that the defendant had shown that but for his trial counsel's deficient performance, the result of the trial would have been different. Ultimately, the court found that not only was trial counsel's performance deficient, but that the deficient performance prejudiced the defense, and as such, the defendant's trial counsel was ineffective and the defendant's Sixth Amendment right to counsel was violated. *Id.* at 615. Although the ineffectiveness of counsel for the defendant at the preliminary hearing was not directly at issue, this case clearly shows that any testimony or allusion to defense counsel's involvement in suborning perjury is not reasonable and prejudices the defense. Similarly, Mr. Giles' previous trial counsel's attempts to suborn perjury were unreasonable and prejudiced his defense.

Appellate Case: 08-1385    Page: 24    Date Filed: 08/20/2008 Entry ID: 3463974

The court in *State of Arizona v. Lee*, 689 P.2d 153 (Ariz. 1984) found that defense counsel's performance was deficient because he called witnesses to the stand whom counsel believed would perjure themselves and then waived his closing argument in light of what he believed to be perjured testimony. The defendant in *Lee* told his trial counsel that he wanted to call two witnesses to testify at trial. Counsel disagreed because the believed the witnesses would perjure themselves, but ultimately conceded to the defendant's request and called the witnesses at trial. Following the testimony, counsel made a record in chambers that he believed that the witnesses perjured themselves and that he might waive his closing argument because he did not think he could argue based upon the perjured testimony. Counsel then, in fact, waived his closing argument and the defendant was found guilty and sentenced to the maximum.

On appeal, the court found that a trial counsel's decision to call or refuse to call certain witnesses other than the defendant is a question of trial strategy and is not constitutionally guaranteed under the Sixth Amendment. *Id.* at 158. However, such strategical decisions "require the skill, training, and experience of the advocate." *Id.* The appellate court noted that trial counsel should take into consideration his ethical duties in coming to his strategical conclusions and cited provisions of the A.B.A. Model Code of Professional Responsibility and Ethical Consideration 7-26 ("The law and Disciplinary Rules prohibit the use of perjured

testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline"). *Id.* at 159.

In this context, the record on appeal presented the issue of whether the defendant had waived his claim for ineffective assistance of counsel based upon his active participation in eliciting perjured testimony. While the appellate court reasoned that a defendant, when agreeing to be represented by counsel, is bound by counsel's tactical and strategic decisions, the court also recognized that a criminal defendant is entitled to a defense that is "his." *Id.* at 160. The court admitted its difficulty in permitting a defendant to pursue an ineffective assistance claim when the defendant is assigning as error counsel's actions that conformed to what the defendant himself demanded; however, the court did not find any waiver on the record. Ultimately, the court found that trial counsel's decision to waive his closing argument fell below the standards of what minimally competent defense counsel would have done under the same circumstances and afforded the defendant to make his record whether such conduct prejudiced his defense.

Mr. Giles' case differs from that presented in *Lee* because the record in the instant appeal does not suggest that Mr. Giles actively participated in the suborning of perjury or that he condoned such actions by his trial counsel. Instead, the record shows that previous trial counsel made attempts to suborn perjury on her own. For

Appellate Case: 08-1385     Page: 26     Date Filed: 08/20/2008 Entry ID: 3463974

the reasons outlined in *Lee*, such conduct flies in the face of counsel's ethical duties and arguably constitutes effective assistance of counsel per se.

Terri Crawford was initially appointed to represent Dale Giles. Ms. Crawford served as counsel for Mr. Giles until she was terminated from her representation of Mr. Giles on March 20, 2007, and present counsel was appointed. (2195:20-21). During her representation of Mr. Giles, Ms. Crawford attempted to influence various witnesses to give false statements. The witnesses believed Ms. Crawford was influencing them in order to shift the blame from Mr. Giles to Charmar Brown, a co-defendant. Ms. Crawford's conduct prior to trial of this matter was repeatedly brought up during the examinations of several witnesses at trial.

Mr. Levy, trial counsel for co-Defendant, Charmar Brown, elicited testimony from several witnesses suggesting that Mr. Giles and Ms. Crawford attempted to suborn perjury to assist in Mr. Giles' defense. Mr. Levy's questioning about Ms. Crawford's conduct suggested that Mr. Giles was behind Ms. Crawford's actions. However, the actions as testified to were the actions of Ms. Crawford and not at the direction of Mr. Giles, and such actions by trial counsel constituted ineffective assistance of counsel. Mr. Giles's defense was unfairly prejudiced by insertion of Ms. Crawford's conduct into his trial.

Appellate Case: 08-1385    Page: 27    Date Filed: 08/20/2008 Entry ID: 3463974

First, Roosevelt Jackson testified that Mr. Giles' previous trial counsel, Terri Crawford, approached him in June 2006 while he was in jail. (2198:15-17, 21-22). Crawford asked Roosevelt to fabricate his version of events to state that he was outside the residence when he heard two shots. (2194:17-21). Mr. Roosevelt told Crawford that he would not say such a statement because he was not outside at the time. (2194:22-23).

George Moore testified that he received a note from Crawford while she was acting as Mr. Giles' attorney. (2275:19-22). Apparently, Crawford met with Moore at Mr. Giles' house when she gave Moore a note. (2276:12-13). According to Moore, the note stated "Put everything on Charmar." (2275:23-24). Mr. Moore thought that Crawford was trying to get Moore to cover up Mr. Giles' involvement and to shift the blame to Charmar Brown. (2310:1-5). Mr. Moore stated that Crawford was the one involved in handing him the note and that "Giles did not coach me." (2308:13).

Later, on direct examination by Mr. Levy as part of his case-in-chief, Mr. Moore testified that the note given to him by Crawford directed Moore to say that he heard three "pops" when he was outside the house on the night of the shootings. (2729:13-17). Further, Moore was to say that following the three "pops," Charmar Brown came out of the house and asked for help moving the bodies. (2729:25-

22

2730:3).  Mr. Moore also testified that Ms. Crawford had a second note to give to "Uncle J", known as Johnny Newell.  (2731:14-23).

Finally, Johnny Newell testified that he was also approached by Ms. Crawford.  Ms. Crawford asked Mr. Newell to lie to law enforcement and tell them that Charmar Brown asked him to clean up the house following the shootings, which according to Mr. Newell, was not the truth.   (2498:11-16; 2508:15-20).  Moreover, Ms. Crawford told Mr. Newell to tell Mr. Moore that when questioned, he should say he heard three shots.  (2509:4-6).

The Nebraska Rules of Professional Conduct address a lawyer's ethical obligations to the court, which include a duty of candor towards the tribunal.  Specifically, Rule 3.3 provides that "[a] lawyer shall not knowingly…offer evidence that the lawyer knows to be false."  Comment 12 expands on a lawyer's ethical duty: "Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding…"  Obviously, asking witnesses to lie violates a lawyer's ethical obligations.

Each of Ms. Crawford's attempts to get witnesses to falsify statements and testimony constitute ineffective assistance of counsel.   First, Ms. Crawford's actions in attempting to suborn perjury were constitutionally deficient because she

was not functioning as counsel guaranteed by the Sixth Amendment. Actions by counsel that are clearly unethical and that would subject them to discipline are unreasonable and simply cannot constitute effective assistance of counsel. Second, Ms. Crawford's actions prejudiced Mr. Giles' defense. Without all of the finger pointing and suggestions that Mr. Giles was involved in getting witnesses to lie to the police and give false testimony, there is a reasonable probability that the result of the proceedings would have been different.

## II. THE GOVERNMENT'S PEREMPTORY CHALLENGES VIOLATED THE APPELLEE'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION UNDER THE LAW.

### A. Standard of Review

A district court's ruling on a *Batson* challenge should be reviewed as a finding of fact, "entitling the trial judge's ruling to great deference on review and subjecting it to reversal only in the face of clear error." *United States v. Moore*, 895 F.2d 484, 485 (8th Cir. 1990).

### B. Argument

During voir dire, the government struck the only two African American jurors from the panel for reasons not supported by the record. Use of such peremptory challenges violates Mr. Giles' Fourteenth Amendment right to Equal Protection.

24

The United States Supreme Court has held that the Equal Protection Clause forbids the government from challenging potential jurors solely on account of their race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719 (1986). Such *Batson* challenges are considered in a three-step process: "First, the opponent of a peremptory challenge must make a prima facie case of racial discrimination. Second, the proponent of the strike must tender a race-neutral explanation. Finally, the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination." *Nicklasson v. Roper*, 491 F.3d 830 (8th Cir. 2007).

In the instant case, the government struck the only two African Americans from the panel. Defense counsel objected to the use of challenges in such a manner and the court required the government to offer race-neutral explanations. (78:23-82:8).

First, the government struck Debra Dryver, an African American woman, from the panel. (78:23-25). The government stated that it struck Ms. Dryver because she lived in Section 8 housing; would "not be fair to the government;" and would be sympathetic to the Defendants. (79:5-11). However, Ms. Dryver was never questioned during voir dire about her government assistance nor of its possible effect upon her impartiality. The only record supporting the government's contentions is the prosecutor's statement that Ms. Dryver lived in Section 8

Appellate Case: 08-1385    Page: 31    Date Filed: 08/20/2008 Entry ID: 3463974

housing.  Moreover, there was no evidence that Ms. Dryver lived anywhere near the Defendants.  The government's reasons for striking Ms. Dryver are transparent and do not survive the *Batson* test.

Second, the government struck the only other African American juror, Lesley Dean.  During voir dire, the government asked the following question "Has anyone had a bad encounter with law enforcement where they feel that they just were not treated fairly?"  (46:3-4).  When questioned about this, Ms. Dean stated that her son was charged with brutality against a police officer.  (48:23-49:3).  When further questioned, Ms. Dean admitted that she would be able to listen to the law enforcement testimony and determine, based upon all the facts, whether they were telling the truth.  (49:18-23).  Ms. Dean essentially agreed that she could objectively assess the case and the credibility of the witnesses.  In support of its peremptory challenge, the government stated it struck Ms. Dean because of her bad experience with law enforcement; however, it was not her personal experience, it was her son's experience.  In addition, Ms. Dean admitted she could, based upon all the facts presented at trial, determine the officers' credibility.  Again, the government's reason for striking Ms. Dean was transparent and does not pass scrutiny under *Batson*.

Despite defense counsel's objections to the use of the government's peremptory challenges in such a way, the court upheld the challenges.  Although

Appellate Case: 08-1385     Page: 32     Date Filed: 08/20/2008 Entry ID: 3463974

the government offered explanations for the strikes, the fact is, the only two African American jurors were struck from the panel for insufficient reasons. As such, Mr. Giles' due process rights were violated.

## III. THE TRIAL COURT VIOLATED MR. GILES' SIXTH AMENDMENT RIGHTS BY FINDING THAT HE COMMITTED FIRST DEGREE MURDER ON FACTS NOT PRESENTED TO THE JURY AND PROVEN BEYOND A REASONABLE DOUBT.

### A. Standard of Review

An appellate court will affirm a lower court's findings of fact on sentencing matters unless they are clearly erroneous. *United States v. Bradford*, 499 F.3d 910, 916 (8th Cir. 2007). A lower court's decision to grant an upward departure is reviewed for an abuse of discretion. *United States v. D'Andrea*, 473 F.3d 859, 863 (8th Cir. 2007). Constitutional challenges to a sentence are reviewed by the appellate court de novo. *United States v. Gallimore*, 491 F.3d 871, 874-75 (8th Cir. 2007).

### B. Argument

In the instant appeal, Mr. Giles was sentenced according to a Revised Presentence Report ("RPSR") that assessed a base offense level of 43 for Counts I, III, V, VI, and VIII of the Fifth Superseding Indictment (Counts II, IV and VII were not grouped with the other offenses since specific terms of imprisonment

Appellate Case: 08-1385    Page: 33    Date Filed: 08/20/2008 Entry ID: 3463974

must be imposed for those counts). The probation officer reached this base offense level of 43 by concluding that Mr. Giles killed Benigno Dominguez, Frank Wilkinson and Faustino Garcia to avoid paying them for a load of marijuana which they delivered to Mr. Giles, and as such, Mr. Giles was guilty of first degree murder. (RPSR p. 12).

To reach this conclusion, the probation officer applied the cross reference at U.S.S.G. §2D1.1(d)(1) which provides that if the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, the offense level is the greater of level 43 and the offense level determined by application of U.S.S.G. §2D1.1(3) (the Drug Quantity Table). Based upon the "offense conduct" recited by the government, the probation officer determined that Mr. Giles was responsible for at least 8,536.7 kilograms of marijuana which results in a base offense level of 34. (RPSR p. 10). Under the provisions of U.S.S.G. §2D1.1(d)(1), the probation officer assigned Mr. Giles with a base offense level of 43 since it was greater than 34 (RPSR p. 12).

Despite counsel's objections to the RPSR, the trial court adopted the report and sentenced Mr. Giles accordingly. (12:20-21). The problem with the trial court's adoption of the RPSR and the sentence given to Mr. Giles is that the issue of murder was never submitted to the jury and was necessarily never proven beyond a reasonable doubt. As such, the trial court violated Mr. Giles' Sixth

Appellate Case: 08-1385     Page: 34     Date Filed: 08/20/2008 Entry ID: 3463974

Amendment rights and the *Apprendi* ruling by sentencing Mr. Giles according to the RPSR.

### 1.    The Issue of First Degree Murder Was Never Submitted to the Jury and Was Never Found Beyond a Reasonable Doubt.

The United States Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum <u>must</u> be submitted to a jury and proved beyond a reasonable doubt." (emphasis added).    As this Court is well aware, the United States Sentencing Guidelines have been made advisory pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).

The Fifth Superseding Indictment charged the following against Mr. Giles: one count of conspiracy to distribute or possess with intent to distribute more than 1,000 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii) (Count I); three counts of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A) and (C)(i) (Counts II, IV and VII); three counts of being a felon in possession of a firearm under 18 U.S.C. 922(g)(1) (Counts III, V and VIII); one count possession with intent to distribute or possession with intent to distribute at least 100 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii)

Appellate Case: 08-1385    Page: 35    Date Filed: 08/20/2008 Entry ID: 3463974

(Count VI); and one count for violation of 18 U.S.C. § 2253, a criminal forfeiture provision, should he be found guilty on the above-listed counts. (Filing No. 298). The jury found against Mr. Giles on all counts, including the two counts of discharge of a weapon. (Filing No. 572).

### a. Discharge of a Weapon was Not Based Upon Sufficient Evidence Nor Found Beyond a Reasonable Doubt.

Although the fact of discharge of a weapon was considered by the jury, it was not based upon sufficient evidence, nor was it found beyond a reasonable doubt.

First, despite the jury's findings, the discharge of a weapon was not based upon sufficient evidence. While the jury found Mr. Giles guilty "beyond a reasonable doubt of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime," the jury did not find beyond a reasonable doubt that the weapon was discharged. Namely, there was no language with regard to the discharge issue indicating that the jury's finding was made beyond a reasonable doubt as there was with the issue of using, carrying or possessing a firearm. For this reason, the jury's finding was not made beyond a reasonable doubt.

In addition, the evidence at trial did not suggest that Mr. Giles discharged the weapon as alleged in this case. George Moore, the only alleged independent

eye witness to the discharge of a weapon, testified that he was present at the house next door to the barbershop on May 3, 2005. (2225:21-2226:1, 2227:12-13). According to his testimony, Mr. Giles called him to come over to the barbershop. (2755:14-16). Mr. Giles did not say that there was anything special going on, and he did not sound different than he usually did or out of the ordinary. (2755:17-21). Mr. Giles and Mr. Moore hung out at the barbershop for about 15 or 30 minutes and nothing seemed out of the ordinary. (2756:17-22). Then, Mr. Moore and Mr. Giles walked next door to the house. (2756:25-2757:3).

Mr. Giles, Charmar Brown and three Hispanic men were present in the home while Mr. Moore was there. (2228:24-2229:1). Mr. Giles and Mr. Brown left the house and Mr. Moore stayed inside the home with the three Hispanic men. (2232:8-10). About 45 minutes later, Mr. Giles and Mr. Brown came back to the house. (2236:1-4).

According to Mr. Moore, Mr. Giles told him to go outside and grab a cellular phone. (2237:6-8). While Mr. Moore was outside, he heard three shots. (2238:9-11). Mr. Giles was standing outside the front door and Mr. Moore heard "pop, pop, pop." (2238:19-20). Mr. Giles called Mr. Moore over to the front door and Mr. Brown was inside the house, coming to the door behind Mr. Giles. (2238:20-23). Mr. Moore did not see who fired the shots. (2325:10-12). Mr. Moore heard a fourth shot after Mr. Brown went back inside the house. (2239:11-

31

13).  The fourth "pop" occurred while Mr. Moore and Mr. Giles remained on the porch.  (2325:15-18).  Mr. Moore saw that Mr. Brown had a gun.  (2240:6-9).

Mr. Moore explained what he heard and when he heard it more fully when he was called as part of the defense's case-in-chief:

> Me and Mr. Giles came outside.  And at that point in time I was already around this corner.  That's when he called me over there.  And that's when – at that point in time when he got tot eh door, he came out, it was going pop, pop, pop.  And then Mr. Brown came to the door.  And that's when I heard the fourth shot, when Mr. Brown came to the door and Mr. Giles told Mr. Brown to go back in and handle his.  That's when I heard the fourth pop.

(2743:14-21).  Mr. Moore testified that he did not see a gun in Mr. Giles' hand during this time.  (2763:19-22).

Mr. Moore was the only independent eye witness called to testify about the shooting on May 3, 2005.  Mr. Moore could not testify that Mr. Giles shot a weapon that evening.  As such, there was insufficient evidence for the jury to find that Mr. Giles had discharged a weapon.

Second, the jury did not find discharge of a weapon beyond a reasonable doubt.  The verdict form presented to and filled out by the jury reads as follows with regard to Count II of the Fifth Superseding Indictment, one of the counts

32

addressing discharge of a weapon (the language is identical with regard to Count IV):

We, the jury, find the Defendant, Dale Giles:

\_\_\_\_\_ **<u>Not guilty</u>** of using carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, as charged in Count II of the Firth Superseding Indictment.

\_\_\_\_\_ **<u>Guilty</u>** beyond a reasonable doubt of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, as charged in Count II of the Fifth Superseding Indictment.

**If you have found the Defendant "Not Guilty" of Count II then skip page 4 and turn to page 5. However, Page 4 must first be completed if, and only if, you found the Defendant "Guilty" of Count I.**

(Filing No. 572 p. 3) (emphasis in original).

The following was found on page 4:

**If you have found the Defendant guilty of Count II, you must mark one of the two boxes below. Do not mark more than one box.**

☐ The firearm was discharged.

Appellate Case: 08-1385    Page: 39    Date Filed: 08/20/2008 Entry ID: 3463974

☐      The firearm was not discharged.

*Id.* The jury found Mr. Giles guilty on Counts II and IV. The jury also checked the boxes indicating that the "firearm was discharged" for both Counts II and IV. *Id.*

### b. Facts of Murder Were Not Submitted to the Jury and Found Beyond a Reasonable Doubt.

Although facts supporting discharge of a weapon may have been presented to the jury as their finding regarding the same suggests, none of the required elements of first degree murder were found by the jury beyond a reasonable doubt which would enable the trial court to sentence Mr. Giles above what would be the statutory maximum.

Murder is defined as follows:

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as a part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated

Appellate Case: 08-1385   Page: 40   Date Filed: 08/20/2008 Entry ID: 3463974

design unlawfully and maliciously to effect the death of any human

being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) …Whoever is guilty of murder in the first degree shall be punished

by death or imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned

for any term of years or for life.

18 U.S.C. § 1111.

With regard to first degree murder, this Court reasoned that "…[f]irst degree murder which, in addition, requires intent-to-kill with premeditation and deliberation…**Whether the defendant perpetrated the murder with premeditation is, of course, a jury question**." *U.S. v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979) (citations omitted) (emphasis added). Then the Court explained:

The relevant evidentiary factors to be considered in determining the

existence of premeditation have been cogently summarized as

follows:

On the basis of events before and at the time of the killing, the trier of

fact will sometimes be entitled to infer that the defendant actually

premeditated and deliberated his intentional killing. Three categories

Appellate Case: 08-1385    Page: 41    Date Filed: 08/20/2008 Entry ID: 3463974

of evidence are important for this purpose: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, Planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which Motive may be inferred; and (3) facts about the Nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

*Id.* As outlined herein, there are a multitude of factors that must be considered and proved beyond a reasonable doubt before one can be found guilty of first degree murder and sentenced accordingly.

As noted by the court in *Blakley v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531 (2004):

Our precedents make clear…that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*…When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment,"…and the judge exceeds his proper authority.

36

(emphasis in original). Thus, if a jury's verdict alone does not support a sentence rendered by the judge, then the judge has exceeded its authority and has run awry of *Apprendi* and the Sixth Amendment.

Even if the jury found discharge of weapon beyond a reasonable doubt (which they clearly did not – see argument A(1), supra.), this would not necessarily equate to a finding of murder beyond a reasonable doubt. In addition, even if evidence was presented at trial that Mr. Giles discharged a firearm which caused the deaths of Dominguez, Frank Wilkinson and Faustino Garcia, such proof could arguably establish first degree murder, second degree murder or manslaughter. As such, additional facts must be found by the jury beyond a reasonable doubt before a defendant's sentence can be enhanced in order to avoid an *Apprendi* problem. A base offense level of 43 is far greater than that of 34. Because the judge adopted the RPSR and the base offense level of 43, the judge sentenced Mr. Giles outside the statutory maximum and ran afoul of his Sixth Amendment rights.

As more fully explained by the United States Supreme Court in the context of California's determinate sentencing law, (DSL) which was found unconstitutional:

> Under California's DSL, an upper limit term sentence may be imposed only when the trial judge finds an aggravating circumstance…An element of the charged offense, essential to a

37

jury's determination of guilt, or admitted in a defendant's guilty plea, does not quality as such a circumstance…Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely*, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum…Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt…the DSL violates *Apprendi's* bright line-rule: Except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Cunningham v. California*, 127 S.C.t 856, 868 (2007).

The trial court in the instant appeal has exceeded its authority and violated Mr. Giles' Sixth Amendment right just at the sentencing court did in *Cunningham*. For the same reasons the United States Supreme Court found California's determinate sentencing law unconstitutional, so should this Court find that the trial court's sentencing of Mr. Giles was unconstitutional. Without the facts of first degree murder being proved to a jury beyond a reasonable doubt, the trial court

38

could not impose upon Mr. Giles a base offense level of 43 based upon U.S.S.G. §2D1.1(d)(1).

###    2.    The Trial Court Failed to Use the Correct Burden of Proof.

In the alternative, should the Court disagree that the elements of first degree murder must be proven to the jury beyond a reasonable doubt to reach the base offense level in the instant case, the Appellant argues that the trial court erred when it failed to make its findings by clear and convincing evidence.  Although Eighth Circuit law indicates that a sentencing court may apply a preponderance of the evidence standard when it finds facts necessary to calculate the guideline range, a clear and convincing standard should be utilized when "the magnitude of a proposed departure dwarfs the guideline range applicable to the substantive offense[] of conviction."  *United States v. Bradford*, 499 F.3d 910, 916 (8th Cir. 2007) (citations omitted).  As such, the more appropriate standard in this case is that of clear and convincing evidence.

As discussed by this Court in *United States v. Townley*, 929 F.2d 365, 369 (8th Cir. 1991), in certain circumstances,

> due process could require more than a mere preponderance.  At the very least, *McMillan* allows for the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due process where, as here, a

Appellate Case: 08-1385     Page: 45     Date Filed: 08/20/2008 Entry ID: 3463974

sentence enhancement factor becomes "a tail which wags the dog of the substantive offense."

The Sentencing Guidelines provide for upward departures in certain drug crimes. U.S.S.G. §2D1.1(d)(1) provides that if the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, the offense level is the greater of level 43 and the offense level determined by application of U.S.S.G. §2D1.1(3) (the Drug Quantity Table). If this Court finds that the trial court need not find murder beyond a reasonable doubt, the Appellant submits that at the very least the burden should be by clear and convincing evidence. However, in the case at hand, the trial court did not use the correct burden of proof, which is evidenced by comments made at sentencing.

The lower court agreed with the RPSR and found that the government had proven the elements of first degree murder for purposes of an enhancement under U.S.S.G. §2D1.1(d)(1) "not just by a preponderance of the evidence, not just by clear and convincing evidence, but by evidence beyond a reasonable doubt…" (Sentencing Transcript, 11:21-25). The lower court made similar comments when it considered other enhancements contained in the RPSR and noted that its "finding would be the same whether that burden of proof were preponderance of the evidence, clear and convincing evidence, or evidence beyond a reasonable doubt." (Sentencing Transcript, 15:24-16:2). These comments indicate that the lower court

40

Appellate Case: 08-1385    Page: 46    Date Filed: 08/20/2008 Entry ID: 3463974

was not making a determination based upon any particular burden of proof, and the court's decision in this regard is in error.

## IV. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS BECAUSE THERE WAS A FATAL VARIANCE BETWEEN COUNT II OF THE FIFTH SUPERSEDING INDICTMENT AND THE EVIDENCE PRESENTED AT TRIAL.[1]

### A. Standard of Review

It is reversible error per se to amend an indictment after a grand jury has passed upon it. *United States v. Begnaud*, 783 F.2d 144 (8th Cir. 1986).

### B. Argument

The lower court should have granted Mr. Giles' motion to dismiss Counts II and III of the Fifth Superseding Indictment because the evidence presented by the government at trial with regard to these counts varied from the conduct charged in the indictment. This variance resulted in a constructive amendment to the indictment in violation of Mr. Giles' Fifth Amendment right to be charged by Grand Jury.

A variance in proof arises when the evidence presented at trial proves facts that are "materially different" from those proved in the indictment. *United States v. Begnaud*, 783 F.2d 144, 147 n. 4 (8th Cir. 1986). A constructive amendment

---

[1] Portions of this argument were borrowed with the permission of Jessica Milburn.

Appellate Case: 08-1385     Page: 47     Date Filed: 08/20/2008 Entry ID: 3463974

arises when a court admits the evidence that modifies the essential elements of the offense charged by the grand jury. *United States v. Johnson*, 934 F.2d 936, 941 (8th Cir. 1991); see also *Begnaud*, supra.

The Fifth Superseding Indictment charged Mr. Giles in Counts II and III with the shooting of Monte Williams that occurred on October 3, 2005. (Filing No. 298). This charge was based upon the Officer Bogdanoff's testimony before the Grand Jury as it related to the shooting of Monte Williams. (Attachment to Filing No. 531). However, prior to trial, it became apparent the government intended to use Clarence Dennis as a witness in its case-in-chief.

Mr. Giles filed a Verified Motion in Limine, or in the Alternative, Motion to Continue Trial on September 18, 2007. (Filing No. 492). This motion was based, in part, upon the information disclosed in a set of discovery received from the government weeks prior to trial which included a non-prosecution agreement for Clarence Dennis. *Id.* When Mr. Giles filed the Verified Motion in Limine, it was his understanding that Counts II and III of the indictment related to the shooting of Monte Williams because of the date, October 3, 2005. This variance was addressed in the Motion in Limine, but the lower court denied Mr. Giles' motion. (Filing No. 499).

At trial, the government represented in its opening statement that, not only would the jury hear about the shooting of Monte Williams, which was charged in

42

the indictment, but also about gunfire that resulted in a different incident with Clarence Dennis. (109:13-19; 110:12-18). The government stated that Count II addressed both the "possession, use, carrying and discharge of a firearm in connection with the Williams and Brown – excuse me, Dennis shootings." (110:23-11:1). Clarence Dennis was then called as a witness during the government's case-in-chief and testified to this separate incident.

While testimony was presented regarding the shooting of Monte Williams through his sister, Cyrinthia Williams, the lower court also permitted the testimony of Clarence Dennis who testified about a shooting independent of that which occurred as testified to by Cyrinthia Williams. (670-673). Thus, the jury heard, and was allowed to consider, evidence that was unrelated to the charged conduct in Counts II and III of the indictment which specifically related to the Monte Williams shooting.

Mr. Giles then filed a Motion to Dismiss Counts II and III of the Fifth Superseding Indictment based upon the variance. The lower court did not rule on the motion until the close of the government's case-in-chief, and notwithstanding the obvious variance between the indictment and the proof presented at trial, the court overruled the motion. (Filing No. 537).

It is reversible error per se to amend an indictment after a grand jury has passed upon it. *United States v. Begnaud*, 783 F.2d 144 (8th Cir. 1986). As in

Appellate Case: 08-1385     Page: 49     Date Filed: 08/20/2008 Entry ID: 3463974

Mr. Giles' case, an amendment to the indictment occurs when "the essential elements of the offense set forth in the indictment are altered, either actually or in effect, by the prosecutor or the court after the grand jury has passed upon them." *Id*. at 147 n. 4. Here, the prosecutor and the lower court actually amended the indictment by allowing the jury to consider the Clarence Dennis incident as proof of Count II, rather than solely the Williams shooting. The acts proved at trial may not vary from those charged in the indictment. *Id*. A variance "occurs when the essential elements of the offense set forth in the indictment are left unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id*.

The shooting of Monte Williams and the incident with Clarence Dennis are materially different that the government's use of Dennis' testimony to prove Counts II and III of the indictment resulted in a constructive amendment to the indictment. The government's constructive amendment of the indictment is a direct violation of Mr. Giles' Fifth Amendment right to be charged by a grand jury and is reversible error per se. See *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000). As such, the conviction of Mr. Giles on Counts II and III should be reversed.

Appellate Case: 08-1385    Page: 50    Date Filed: 08/20/2008 Entry ID: 3463974

## CONCLUSION

The Appellant respectfully requests that this Court reverse the lower court's conviction and sentence in this matter, or in the alternative remand for a new trial and a new sentencing because: (1) the Appellant received ineffective assistance of counsel at the outset of his case; (2) the government's use of peremptory challenges violated the Appellant's 14th Amendment right to Equal Protection; (3) the lower court violated Mr. Giles' Sixth Amendment rights by finding that he committed first degree murder on facts not presented to the jury and proven beyond a reasonable doubt.

Respectfully submitted,

DALE GILES, Appellant,

By: _____
Mark A. Weber, NSBA #18666
OF WALENTINE, O'TOOLE,
    MCQUILLAN & GORDON
11301 Davenport Street
P.O. Box 540125
Omaha, NE  68154
(402) 330-6300 – Phone
(402) 330-6303 – Facsimile
maweber@womglaw.com

Counsel for Appellant

45

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

vs.

DALE GILES,

Appellant.

_____

## CERTIFICATE OF SERVICE

_____

MARK A. WEBER, after being first duly sworn, states:

    1.)  He is one of the attorneys for Appellant herein;

    2.)  On the ___ day of August, 2008, he served by prepaid, First Class United States mail, two copies of the Brief of Appellant on Ms. Maria R. Moran, Assistant United States Attorney, 1620 Dodge Street, Suite 1400, Omaha, NE 68102.

Appellate Case: 08-1385     Page: 52     Date Filed: 08/20/2008 Entry ID: 3463974

Respectfully submitted,

DALE GILES, Appellant,

By: _____
Mark A. Weber, NSBA #18666
OF WALENTINE, O'TOOLE,
    MCQUILLAN & GORDON
11301 Davenport Street
P.O. Box 540125
Omaha, NE 68154
(402) 330-6300 – Phone
(402) 330-6303 – Facsimile
maweber@womglaw.com

Counsel for Appellant

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

UNITED STATES OF AMERICA,

Appellee,

vs.

DALE GILES,

Appellant.

_____

**CERTIFICATE OF COMPLIANCE**
_____

MARK A. WEBER, after being first duly sworn, states:

1.) The diskette accompanying the filing of the Appellant's Brief in this matter has been scanned for viruses and is virus-free.

2.) Appellant's Brief in this matter is 9,908 words in length, excluding the Summary and Request for Oral Argument, the Table of Contents, Table of Authorities, Certificate of Service and the Certificate of Compliance, which complies with the volume limitation found at Fed. R. App. P. 32(a)(7)(B).

Appellate Case: 08-1385    Page: 54    Date Filed: 08/20/2008 Entry ID: 3463974

3.) Appellant's Brief in this matter was prepared using Microsoft Word, with a 14-pt proportionally spaced Times New Roman font face in compliance with Fed. R. App. P. 32(a)(5).

Respectfully submitted,

DALE GILES, Appellant,

By: _____

Mark A. Weber, NSBA #18666
OF WALENTINE, O'TOOLE,
    MCQUILLAN & GORDON
11301 Davenport Street
P.O. Box 540125
Omaha, NE 68154
(402) 330-6300 – Phone
(402) 330-6303 – Facsimile
maweber@womglaw.com

Counsel for Appellant

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

vs.

DALE GILES,

Appellant.

_____

## ADDENDUM

_____

Appellate Case: 08-1385     Page: 56     Date Filed: 08/20/2008 Entry ID: 3463974